UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROSYLYN JOSEPH                                    CIVIL ACTION

VERSUS                                               NO. 22-1530

EVONIK CORPORATION, ET AL.            SECTION "R" (3)

## ORDER AND REASONS

Before the Court is defendant Shell Oil Company's ("Shell") motion to dismiss plaintiff Rosylyn Joseph's amended complaint under Federal Rule of Civil Procedure 12(b)(6)[1] and Evonik Corporation's ("Evonik") motion to dismiss under Rule 12(b)(6) or, in the alternative, for a more definite statement under Rule 12(e).[2]  Plaintiff opposes both motions.[3]

## I.    BACKGROUND

This case arises out of plaintiff's alleged exposure to ethylene oxide ("EtO") near a petrochemical plant in Reserve, Louisiana (the "facility"), owned and operated by defendants Evonik and Shell.[4]  Shell owned and

---

[1]    R. Doc. 7.
[2]    R. Doc. 15.
[3]    R. Docs. 11 & 16.
[4]    R. Doc. 1 at 2.

operated the facility from 1991 until 1999, and Evonik has owned and operated the facility since that time.[5]

On April 26, 2021, a group of fourteen Louisiana residents, all of whom live within seven miles of the facility and either contracted cancer or had a spouse die from cancer, filed suit in the Civil District Court for the Parish of St. John the Baptist, alleging that inhalation of EtO emitted from the facility was a substantial factor in causing their or their spouses' cancer.[6]  Rosylyn Joseph was among those fourteen plaintiffs.  In their complaint, the plaintiffs named as defendants Evonik and Shell, as well as four non-diverse employee defendants.[7]  As to Evonik and Shell, plaintiffs alleged claims of negligence, civil battery, and nuisance.[8]

On June 4, 2021, Evonik removed the case to federal court, contending that the non-diverse employee defendants were improperly joined, and that this Court had diversity jurisdiction under 28 U.S.C. § 1332.[9]  On October 19, 2021, the Court denied plaintiffs' motion to remand and dismissed plaintiffs' claims against the improperly joined employee defendants.[10]

---

[5]     *Id.*
[6]     *Id.*
[7]     *Id.* at 2-3.
[8]     *Id.* at 3.
[9]     *Id.*
[10]    *Id.*

Shell and Evonik both moved to dismiss plaintiffs' complaint for failure to state a claim.[11]  Both defendants argued that plaintiffs' claims against them were time-barred because suit was filed after the termination of plaintiffs' one-year prescriptive period.[12]  They further asserted that the claims must be dismissed on the merits, because plaintiffs had not stated a claim for negligence, battery, or nuisance under Louisiana law.[13]

On May 27, 2022, this Court issued an Order and Reasons resolving defendants' motions to dismiss.  The Court granted Shell's motion to dismiss in its entirety on the grounds that plaintiffs' claims against Shell were time-barred, and that plaintiffs failed to allege facts warranting the application of *contra non valentem*.[14]  Because Shell ceased operating the facility in 1999, the Court held that the continuing tort doctrine was inapplicable as to Shell.[15]

The Court granted in part and denied in part Evonik's motion.  The Court held that although plaintiffs had not alleged facts demonstrating their entitlement to *contra non valentem*, they had plausibly alleged continuing-tort claims against Evonik.[16]  The Court thus proceeded to assess whether

---

[11]     *Id.*
[12]     *Id.*
[13]     *Id.* at 4.
[14]     *Id.* at 21.
[15]     *Id.* at 21.
[16]     *Id.* at 25.

plaintiffs stated claims on the merits.  The Court dismissed plaintiffs' battery claim with prejudice.[17]  It also dismissed plaintiffs' negligence claim on the grounds that plaintiffs failed to plausibly allege the existence of a duty.[18]  It denied Evonik's motion to dismiss plaintiffs' nuisance claim.[19]  The Court granted leave for plaintiffs to amend their complaints to allege facts to support the application of  the *contra non valentem* doctrine and existence of a negligence duty.[20]  It also severed the case into fourteen separate cases, given the significant factual variations between plaintiffs.[21]

Joseph filed an amended complaint on June 10, 2022.  In her amended complaint, she alleges that she has lived near the facility, which is currently operated by Evonik, for over 30 years, and that she contracted breast cancer in 2010 as a result of the decades of dangerous emissions from EtO from the facility. [22]  She contends that defendants "have long known of the dangerous effects of EtO as a carcinogen and had the ability to protect their neighbors by reducing or eliminating their emission of EtO, but instead chose, and

---

[17]     *Id.* at 32.
[18]     *Id.* at 30.
[19]     *Id.* at 39.
[20]     *Id.* at 22, 30.
[21]     *Id.* at 46.
[22]     R. Doc. 3 at 1 ¶ 1.

continue to choose, to emit dangerous levels of EtO in the community surrounding the facility."[23]

Plaintiff alleges that although she was diagnosed with cancer in 2010, she had no reason to know that her cancer was caused by the EtO emissions from the facility until she received a promotional letter from a law firm in 2021. She notes that EtO is colorless and odorless, so she could not smell or see the EtO in the air.[24] When she was diagnosed, her doctor did not inform her that EtO may have been the cause of her cancer, nor did defendants publicize the risks of EtO to the community.[25] She allegedly "had no knowledge of the operation of the facility at any time, did not know that it emitted EtO, and did not know that the emissions of EtO were subject to regulation and the subject of scientific studies."[26] She claims she had no "reasonable access to or knowledge of the body of industry and scientific information regarding the dangers of EtO," nor did she "know how to research information related to operation of the facility."[27] Finally, she

---

23  *Id.*
24  *Id.* at 2 ¶ 6.
25  *Id.* at 12 ¶ 54.
26  *Id.* at 12 ¶ 54.
27  *Id.* at 12-13 ¶ 54.

alleges that defendants' "misrepresentations about the carcinogenic quality of EtO impeded" her ability to bring her claims.[28]

In support of her negligence claim, plaintiff alleges that the Environmental Regulatory Code requires defendants "to control the overall emissions of EtO into the atmosphere through installing and diligently maintaining emissions control systems and equipment at 'point sources' where emissions are planned to occur and through a [leak detection and repair] program to control unplanned fugitive emissions."[29]  She contends that an August 2021 community meeting held by the EPA and the Louisiana Department of Environmental Quality showed that Evonik failed to control planned EtO emissions from its scrubber—a source point—and from unplanned fugitive emissions from leaks and faulty equipment.[30]  She also alleges that Evonik is making efforts to conform its conduct to the required standards of care to protect the health of plaintiff and others in the community.[31]

Shell and Evonik both moved to dismiss plaintiff's amended complaint. Shell contends that, as a threshold matter, plaintiff's claims are time-

---

[28]   *Id.* at 11 ¶¶ 51.

[29]   *Id.* at 10-11 ¶ 48.

[30]   *Id.*

[31]   *Id.*

barred.[32]  Shell argues that *contra non valentem* does not apply to plaintiff's claims because plaintiff made no inquiry as to the cause of her cancer.[33]  Shell also contends that plaintiff fails to plausibly allege the existence of a specific negligence duty that Shell breached.[34]

In Evonik's motion to dismiss, it makes similar arguments as Shell about plaintiff's claim to *contra non valentem* and the sufficiency of her negligence allegations.[35]  Evonik seeks, in the alternative, a more definite statement under Rule 12(e).[36]  Evonik also argues that the continuing tort doctrine does not apply, and that plaintiff failed to state a claim for nuisance.[37]

Plaintiff opposes the motions.[38]

The Court considers the parties' arguments below.

## II.   MOTIONS TO DISMISS

### A.   Legal Standard

---

[32]   R. Doc. 7 at 3-4.
[33]   *Id.* at 9.
[34]   *Id.* at 11.
[35]   R. Doc. 15-1 at 5-8, 12-14.
[36]   *Id.* at 18.
[37]   *Id.* at 11, 18-20.
[38]   R. Doc. 11 at 13-14; R. Doc. 16 at 10-11.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

**B.    Discussion**

    *1.    Shell's Motion to Dismiss*

Plaintiff's new allegations supporting the application of the doctrine of *contra non valentem* do not cure the deficiencies the Court identified in the original complaint.[39]  The Court thus grants Shell's motion to dismiss in its entirety.

Plaintiff's claims are subject to the one-year prescriptive period for delictual actions under Louisiana law.   La. Civ. Code art. 3492.  This period runs "from the day injury or damage is sustained." *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 527 (5th Cir. 1995) (quoting La. Civ. Code art. 3492).  "Damage is considered to have been sustained, within the meaning of the article, only when it has manifested itself with sufficient certainty to support accrual of a cause of action." *Id.* (quoting *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993)).

---

[39]   Shell also argues in its motion to dismiss that the continuing tort doctrine does not toll prescription as to Shell.  R. Doc. 7 at 6-7.  The Court already ruled that the continuing tort doctrine does not apply to plaintiff's claims against Shell, R. Doc. 1 at 21, which plaintiff does not dispute.

Plaintiff was diagnosed with breast cancer in 2010,[40] but she did not file her claims until April of 2021, over a decade later.  Accordingly, unless the one-year period was suspended or another exception applies, her claims are prescribed.  Plaintiff argues that the doctrine of *contra non valentem* suspended the one-year prescriptive period until April 28, 2020, the date she received an advertisement in the mail from personal injury lawyers about the risks of EtO in her community.  She alleges that before this date, she "did not reasonably know that it was the [d]efendants' acts and omissions that caused" her cancer.[41]

Under Louisiana law, *contra non valentem* is a doctrine that tolls the statute of limitations.  It is thus "an exception to the general rules of prescription."  *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).  This doctrine suspends the prescriptive period under certain circumstances, including situations in which the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.  *Renfroe v. State ex rel. Dept. of Transp. & Dev.*, 809 So. 2d 947, 953 (La. 2002).

---

[40]   R. Doc. 3 at 3 ¶ 10.
[41]   *Id.* at 11.

But this exception, sometimes known as the "discovery rule," is available only in "exceptional circumstances." *Meggs v. Davis Mortuary Serv., Inc.*, 301 So. 3d 1208, 1213 (La. App. 5 Cir. 2020) (quoting *Renfroe*, 809 So. 2d at 953). Courts assessing the applicability of *contra non valentem* must focus on the reasonableness of the tort victim's action or inaction. *See Griffin v. Kinberger*, 507 So. 2d 821, 824 n.2 (La. 1987).

The prescriptive period thus begins to run once a party has "constructive knowledge . . . of facts that would entitle him to bring a suit," even if he does not have actual knowledge of those facts. *Campo v. Correa*, 828 So. 2d 502, 510 (La. 2002). "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *Id.* at 510-11. "Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead," and therefore "is sufficient to start running of prescription." *Id.* at 511 (citations omitted); *see also Meggs*, 301 So. 3d at 1213 ("If the plaintiff could have discovered the cause of action by exercising reasonable diligence, the doctrine will not prevent the running of prescription." (citations omitted)); *Miles v. MEMC Pasadena, Inc.*, No. 08-4436, 2009 WL 1323014, at *3 (E.D. La. May 8, 2009) ("The plaintiff must show that the cause of action for his injuries was not reasonably knowable. This is a heavy burden."). The discovery rule

provides that, for prescription to run, a plaintiff must have actual or constructive notice of the "tortious act, the damage caused by the tortious act, and the causal link between the act and the damage." *Ducre v. Mine Safety Appliances*, 963 F.2d 757, 760 (5th Cir. 1992) (citing *Knaps v. B & B Chem. Co.*, 828 F.2d 1138, 1139 (5th Cir. 1987)).

The weight of state and federal caselaw indicate that a medical diagnosis generally puts a plaintiff on constructive notice of her cause of action, thereby starting the prescriptive period. *See Brown*, 52 F.3d at 527 ("[C]*ontra non valentem* will suspend the running of the prescriptive period until the claimant knows or should reasonably know that he has suffered damages. . . . With a latent disease, this is usually upon diagnosis." (internal citations omitted)); *Owens v. Martin*, 449 So. 2d 448, 451 n.4 (La. 1984) (prescription began to run at time plaintiff was informed of his diagnosis); *Layton v. Watts Corp.*, 498 So. 2d 23, 26 (La. App. 5 Cir. 1986) (same); *Cole v. Celotex*, 620 So. 2d 1154, 1157 (La. 1993) (same); *cf. Jenkins v. Bristol-Myers Squibb*, No. 14-2499, 2016 WL 10100281, at *8 (E.D. La. July 8, 2016), *aff'd*, 689 F. App'x 793 (5th Cir. 2017) (finding that the prescriptive period started *before* the plaintiff's diagnosis because he was told the potential cause of his symptoms before he was diagnosed).

In *Tenorio v. Exxon Mobil Corp.*, for example, the plaintiff argued that *contra non valentem* applied because he was not told until four years after he was diagnosed with throat cancer that he may have been exposed to radiation at the job where he worked over twenty years earlier.  170 So. 3d 269, 275 (La. App. 5 Cir.), *writ denied*, 178 So. 3d 149 (La. 2015).  The Louisiana Fifth Circuit Court of Appeal rejected his argument, and found that plaintiff's cancer diagnosis "was constructive notice sufficient to put [him] on guard and to call him to inquire into the cause of his condition."  *Id.*

Similarly, in *Lennie v. Exxon Mobil Corp.*, the Louisiana Fifth Circuit Court of Appeal held that decedent's lung cancer diagnosis "was constructive notice sufficient to put" plaintiffs, relatives of the decedent, "on guard and to call for them to inquire further into the cause of his condition."  251 So. 3d 637, 648 (La. App. 5 Cir. 2018).  The court noted that the plaintiffs "offered no evidence as to what they understood caused [decedent's] lung cancer and subsequent death," and concluded that the plaintiffs' failure to "make even a rudimentary inquiry into the cases of [decedent's] illness and death," including by failing to speak to the decedent's doctor about the cause of his cancer, was unreasonable.  *Id.*

Most recently, the Louisiana First Circuit found that prescription ran from the date of a cancer diagnosis and rejected the plaintiff's invocation of

*contra non valentem*.  *See Guerin v. Travelers Indem. Co.*, 296 So. 3d 625 (La. App. 1 Cir. 2020).  In *Guerin*, the plaintiff argued that his claims, filed three years after he was diagnosed with multiple myeloma, were not prescribed because "it was reasonable for him to simply accept his physician's explanation in 2015 that, 'well, you know, you have it, and I don't know where it came from,' and make no further inquiries into the cause of his condition until coming across a lawyer's advertisement in a magazine in June 2018."  *Id.* at 631.  Consistent with *Tenorio* and *Lennie*, the court found that plaintiff's "inaction was not reasonable in light of the knowledge that he possessed, and that his diagnosis [] was constructive notice sufficient to put him on guard and to call him to inquire into the cause of his condition."  *Id.*

Plaintiff attempts to distinguish these cases on the grounds that, unlike like the plaintiffs in *Tenorio*, *Lennie*, and *Geurin*, she is "not a current or former industrial employee who either had actual knowledge of exposure to dangerous materials or who performed the type of industrial and hazardous work for which a cancer diagnosis would naturally excite one's attention and trigger a reasonable inquiry."[42]  The distinction plaintiff draws is not based in the caselaw; indeed, none of those cases turned on the nature of the plaintiff's work.  And much like here, the plaintiffs in *Tenorio* and *Lennie*

---

[42]    R. Doc. 11 at 7.

alleged that they had no reason to know that they were exposed to harmful agents, even though they performed industrial jobs. *See Tenorio*, 170 So. 3d at 275 (plaintiff "claim[ed] to not have had knowledge of the radiation exposure" at his place of work); *Lennie*, 251 So. 3d at 648 (plaintiffs alleged they had "no knowledge of [naturally occurring radioactive material], its hazardous effects, or the decedent's potential exposure to it").

Further, the United States Fifth Circuit Court of Appeals recently reaffirmed the significance of a medical diagnosis in starting a plaintiff's prescriptive period in the context of a plaintiff who was exposed to harmful agents by airborne emissions from a nearby plant rather than through industrial work. *See Butler v. Denka Performance Elastomer, LLC*, 16 F.4th 427, 439-40 (5th Cir. 2021). In *Butler*, the plaintiff alleged various health conditions resulting from chloroprene emissions from a nearby neoprene plant. *Id.* at 432. In holding that plaintiff had adequately alleged *contra non valentem* at the pleadings stage, the court distinguished *Tenorio*, *Lennie*, and *Guerin*, as cases in which "a plaintiff's *diagnosis*, more than one year prior to filing suit, constitute[d] constructive notice." *Id.* at 440 (emphasis in original). The court stated that the "diagnosis" distinction is "critical," and that, because the *Butler* plaintiff "was not diagnosed or otherwise told that her symptoms were a result of excessive chloroprene emissions more than

one year prior to filing suit," she was able to rely on *contra non valentem* at the pleadings stage.  *Id.*

In its May 27, 2022 Order and Reasons dismissing the original complaint, this Court granted plaintiff leave to amend so that she could add allegations of "what specific actions [she] took to investigate or otherwise inquire about the causes of [her] cancer."[43]  This could include, for example, allegations regarding questions plaintiff asked her doctor about the cause of her cancer.  Plaintiff's amended complaint includes no such allegations. Rather, she focuses on the information what she was not given—in particular, she notes that her doctors never told her that her cancer may have been caused by EtO exposure and that "[t]here was no public awareness initiative or campaign by [d]efendants or any governmental agency to educate the community" about the risks of EtO before she filed the lawsuit.[44]  But the relevant inquiry for *contra non valentem* is not whether information was furnished to plaintiff; rather, it is whether she affirmatively undertook an investigation, as "a plaintiff will be responsible to seek out those whom [s]he believes may be responsible for a specific injury."  *Geurin*, 296 So. 3d at 629. The amended complaint makes clear that plaintiff made no efforts to

---

[43]     R. Doc. 1 at 17.
[44]     R. Doc. 11 at 6-7.

determine the cause of her cancer until she was sent an advertisement from personal injury lawyers about a potential lawsuit, much like the plaintiff in *Geurin*.  She thus failed to fulfill her "obligation to further investigate the facts in order to pursue [her] claim."  *In re Taxotere Prods. Liab. Litig.*, 995 F.3d 384, 391 (5th Cir. 2021) (quoting *Rozas v. Dep't of Health & Human Res.*, 522 So. 2d 1195, 1197 (La. App. 4th Cir. 1988)).

Plaintiff also focuses on all the information she did not know—that the facility emitted EtO, that she inhaled EtO, that the facility's EtO emissions were the subject of scientific studies[45]—but these allegations indicate that she lacked *actual* knowledge, not constructive knowledge.   Nor do these allegations indicate that her failure to investigate was reasonable.  As in the original complaint, plaintiff does not allege that she lacked education or access to a computer. [46]  And unlike the caselaw on which plaintiff relies, she was never misled about the cause of her cancer.  *Compare Griffin*, 507 So. 2d at 824 (failure to investigate cause of infant's injury was reasonable in light of doctor's assurances that "the symptoms were the normal result of necessary administration of oxygen in premature births"); *Miles*, 2009 WL 1323014, at *4 (applying *contra non valentem* when plaintiff was "repeatedly

---

[45]    R. Doc. 11 at 6-7.
[46]    R. Doc. 1 at 18-19.

assured by his physicians that there was no connection between his symptoms and the SiF4 gas leak").[47]

Plaintiff alleges that she could not have found the literature regarding the connection between EtO and cancer, as these materials were not widely available to the general population.[48] The long list of publications describing the harmful effects of EtO that plaintiff includes in her amended complaint[49] belies this argument.  Plaintiff was able to locate a wealth of information about studies of the harmful effects of EtO for her complaint and does not explain why she was unable to locate the same information sooner.  As noted in this Court's May 27, 2022 Order and Reasons, "[t]he entire thrust of plaintiffs' complaint is that the carcinogenic effects of EtO have been known and publicized for decades," and that "at least as recently as 2018, it was knowable to the public that *these* plaintiffs, living in *this* area, face high cancer risks from EtO." Even if the Court accepts plaintiff's contention that

---

[47]   Plaintiff also relies on *Young v. Clement*, a medical malpractice case in which the Louisiana Supreme Court held that it was reasonable, under the circumstances, for a woman with a long history of urinary and reproductive health issues not to inquire about the cause of a blocked ureter caused by a negligently performed fallopian tube removal.  367 So. 2d 828 (La. 1979).  That case bears little resemblance to the facts here, where plaintiff received a cancer diagnosis and failed to undertake any sort of inquiry.

[48]   R. Doc. 3 at 12 ¶ 52.

[49]   *Id.* at 5-7 ¶¶ 24-35.

she could not have discovered her cause of action as of the date of her diagnosis, her allegations indicate that she had constructive knowledge by 2018 at the latest.[50]  Accordingly, her claim was "reasonably knowable in excess of one year prior to [her] filing suit." *In re Taxotere Prods. Liab. Litig.*, 995 F.3d at 395 (internal quotation marks omitted).

Plaintiff correctly points out that *Lennie* established that the mere presence of information on the internet is insufficient to give rise to constructive notice, because such a rule would "eliminate any requirement that a plaintiff have some baseline knowledge sufficient to excite attention and call for inquiry."[51] *Lennie*, 251 So. 3d at 646.  But plaintiff's cancer diagnosis, much like the decedent's in *Lennie*, was "constructive notice sufficient to put [her] on guard and to call for [her] to inquire further." *Id.* at 648.  And like the *Lennie* plaintiffs, plaintiff's failure to undertake any

---

[50]   R. Doc. 1 at 20.  In her amended complaint, plaintiff omitted the allegation from the original complaint that the EPA released the results of the 2014 National Air Toxics Assessment of EtO in August 2018, which indicated that there were "dangerous levels of airborne EtO in certain census tracts around the facility," and that the EPA's report "calculated that individuals living in those census tracts . . . have some of the highest risks of cancer from EtO exposure in the country."  R. Doc. 1 at 20-21.  Nevertheless, the Court may consider "documents incorporated into the complaint  by reference, and matters of which a court may take judicial notice," *Petrobras America, Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021), including the original complaint.

[51]   R. Doc. 11 at 11.

investigation, including searching online or asking her doctor about the cause of her cancer, is fatal to her claim to *contra non valentem*.

Finally, plaintiff's argument that she lacked the scientific expertise to understand and interpret the outstanding body of literature on the connection between EtO and cancer does not change the Court's conclusion. "To the extent [the medical literature] was difficult to understand, the patient's consulting her oncologist . . . or other treating physician as to the meaning of the information would be part of [the] diligence" required. *In re Taxotere Prods. Liab. Litig*., 995 F.3d at 393.[52] As another section of this court recently noted, the duty to undertake a reasonable investigation "is not a duty to find the cause of a diagnosis and understand the technical and scientific cause and effect relationship between the chemical and the

---

[52]   In the cases of other severed plaintiffs, several sections of this Court have relied on the *In re Taxotere Products Liability Litigation* case to reach the opposite conclusion on the grounds that the Fifth Circuit's ruling was "premised on the proposition that, if a plaintiff shows that a reasonable inquiry would have been futile, the plaintiff can overcome the fact that her failure to inquire was reasonable." *See Jones v. Evonik Corp. et al.*, No. 22-1522, R. Doc. 18 at 15 (E.D. La. Aug. 10, 2022); *see also Fortado v. Evonik Corp. et al.*, No. 22-1518, R. Doc. 19 at 17 (E.D. La. Sept. 23, 2022).  But in *In re Taxotere*, the Fifth Circuit declined to apply *contra non valentem* because there was information on the internet connecting the drug to the plaintiffs' ailment, and had the plaintiffs searched for it, they could have found it and discussed its import with their doctors.  The same is true here, so there is no basis to conclude that a reasonable inquiry would have been futile.

diagnosis.  It is simply a rudimentary inquiry into the possible source of the diagnosis."  *Jack v. Evonik Corp., et al.*, No. 22-1520, R. Doc. 17 at 13 (E.D. La. Aug. 12, 2022).  Plaintiff did not undertake this "rudimentary inquiry," nor has she plausibly alleged that such failure was reasonable.  This case is therefore not an "exceptional circumstance[]" that warrants application of *contra non valentem.  See Tassin v. Evonik Corp., et al.*, No. 22-1528, R. Doc. 18 at 8 (E.D. La. Aug. 8, 2022) ("Having failed to [reasonably inquire upon being diagnosed with cancer], plaintiff cannot rely on the doctrine of *contra non valentem* to save his claims from prescription.").

### 2.   *Evonik's Motion to Dismiss*

In Evonik's motion to dismiss, it argues that plaintiff's claims are time-barred because neither *contra non valentem* nor the continuing torts doctrine applies.[53]  Evonik contends that even if her claims were not time barred, plaintiff failed to state a claim for negligence and nuisance.

As a threshold matter,  this Court already ruled in its May 27, 2022 Order and Reasons that plaintiff stated a claim for nuisance and that she "sufficiently alleged continuing torts by Evonik," so her claims against

---

[53]    R. Doc. 15 at 4-11.

Evonik "are therefore not prescribed."[54]   The Court will thus evaluate Evonik's arguments about the continuing tort doctrine and plaintiff's nuisance claim under the standards for motions for reconsideration.  *See* Section III, *infra*.  Because the Court has already determined that *contra non valentem* does not apply to plaintiff's claims, *see* Section II.B.1, *supra*, the only issue to resolve under the motion to dismiss standard is the sufficiency of plaintiff's allegations of negligence.

Under article 2315 of the Louisiana Civil Code, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code art. 2315(A).  Louisiana courts conduct a duty-risk analysis to determine whether to impose liability under article 2315.  *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 632-33 (La. 2006).  Liability requires satisfaction of five elements: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.  *Id.* at 633.

---

[54]   R. Doc. 1 at 24.

In the original complaint, plaintiffs cited to no "specific standard to which Evonik should have conformed its conduct." [55]   Rather, plaintiffs alleged that Evonik had a duty to exercise "ordinary care," to "avoid an unreasonable risk of harm to persons located in the surrounding areas," and to "reduce emissions to a level that do[es] not pose an unreasonable risk of harm." [56]  The Court held that these allegations failed to identify a "statutory, jurisprudential, or any other source of law" that gives rise to a specific standard to which Evonik must conform. [57]   In her amended complaint, plaintiff does identify a specific standard to which Evonik must conform: L.A.C. 33:III (Louisiana Environmental Code, Air Quality).  In particular, plaintiff points to L.A.C. 33:III.905, and 33:III.2121, which she contends require Evonik to "control the overall emissions of EtO into the atmosphere through installing and diligently maintaining emissions control systems and equipment at 'point sources' where emissions are planned to occur and through a LDAR program to control unplanned fugitive emissions." [58]  She goes on to allege that the August 2021 community meeting established that Evonik breached that duty by failing to "control[] planned EtO emissions

---

[55]   R. Doc. 1 at 30.

[56]   *Id.* at 28.

[57]   *Id.*

[58]   R. Doc. 3 at 10-11 ¶ 48.

from its scrubber—a source point—and from unplanned fugitive emissions from leaks and faulty equipment."[59]

As other sections of this court have noted in assessing the negligence allegations of other plaintiffs, these allegations are "a far cry from the *Butler* plaintiff's allegations and the allegations in the unsevered Original Plaintiffs' complaint that generally alluded to 'unreasonably excessive emissions.'" *Foster v. Evonik Corp.*, No. 22-1519, 2022 WL 3214406 (E.D. La. Aug. 9, 2022). Indeed, the very regulation plaintiff invokes in her complaint has been deemed a sufficient basis for a negligence duty. In *Spencer v. Valero Refining Meraux, LLC*, the Louisiana Fourth Circuit Court of Appeal held that L.A.C. 33.III.905(A) articulates a "specific standard of care" for purposes of a negligence claim. No. 2021-383, 2022 WL 305319 (La. App. 4 Cir. Feb. 2, 2022). In that case, the plaintiff sued the defendant refinery for negligence following an explosion at the refinery caused by a chemical release into the air. *Id.* at *1. The court found that the defendant "had a duty to control the overall level of contaminants entering the surrounding area by conforming its conduct to a specific standard of care under L.A.C. 33:III.905(a)," and that it "did not conform its conduct to this standard." *Id.* at *5. The court thus held that the defendant was liable for negligence under

---

[59]     *Id.*

La. Civ. C. art 2315. *Id.* at *6. Evonik seeks to distinguish *Spencer* on the grounds that the refinery in that case exceeded permitted chemical release levels,[60] but the *Spencer* court did not hold that a release in excess of permitted limits was the *sine qua non* of a claim for negligent breach of the cited regulation. *See Tassin v. Evonik Corp., et al.*, No. 22-1528, R. Doc. 18 at 14 (E.D. La. Aug. 8, 2022). By its terms, L.A.C. 33.III.905(A) requires the installation and maintenance of air pollution control facilities "whenever any emissions are being made which can be controlled by the facilities, *even though the ambient air quality standards in affected areas are not exceeded.*"

Evonik's argument that plaintiff failed to adequately allege a breach is likewise not compelling. Plaintiff alleged that the EPA held a community meeting in August of 2021 "to inform residents living near" the facility that "Evonik's EtO emissions controls do not sufficiently protect human health."[61] At that meeting, the EPA "advised that Evonik ha[d] decreased its EtO emissions from 2014 to 2020 by nearly 50%."[62] Despite that reduction,

---

[60]   R. Doc. 15-1 at 16.
[61]   R. Doc. 3 at 8-9 ¶ 42.
[62]   *Id.* at 9 ¶ 43.

Evonik's EtO emissions continue to be "[in]sufficiently protective of human health" according to the EPA.[63]

Plaintiff alleges that fugitive emissions from the facility were reduced by 92% during the 2014-2020 time frame, due primarily to improvements in the facility's LDAR program.[64]   Improvements in the operation of the facility's stack scrubber, "which is the system and equipment used to control planned and known EtO emissions from the facility," caused the remainder of the reduction in emissions.[65]  Plaintiff thus concludes that Evonik took a number of corrective measures to increase the efficacy of its emissions control systems only after it was pressured to do so by the government.[66] These allegations suggest that before it took corrective action, Evonik operated the facility in contravention of its duty to control fugitive emissions pursuant to L.A.C. 33.III.2121 and to diligently maintain emissions control facilities pursuant to L.A.C. 33.III.905(A).   Plaintiff further alleges that despite these recent improvements, Evonik continues to violate these duties, which causes the facility to continue to emit unsafe levels of EtO.   The Court finds that these allegations as sufficient to state a claim for negligence.  *See*

---

[63]     *Id.*
[64]     *Id.* ¶ 44.
[65]     *Id.* at 10 ¶ 45.
[66]     *Id.* at 9 ¶ 44.

*Tassin*, No. 22-1528, R. Doc. 18 at 14 (plaintiff's allegations that Evonik failed to "implement[] and install[] more effective and efficient systems and equipment at point sources" sufficient to state a claim for negligence). Evonik's motion to dismiss is thus denied.

## III.   MOTION FOR RECONSIDERATION

In its motion to dismiss, Evonik argues that plaintiff failed to (1) allege continuing torts against Evonik (2) state a claim for nuisance.[67]  Because the Court already ruled on both of these issues in its May 27, 2022 Order and Reasons, the Court will treat these arguments as a motion for reconsideration.  While the Federal Rules of Civil Procedure do not recognize a motion for reconsideration, "courts customarily consider such motions under Rule 60(b) or Rule 59(e)." *Adams v. United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, Local 198, et al.*, 495 F. Supp. 3d 392, 395 (M.D. La. 2015).  Because Rules 59(e) and 60(b) apply to final orders and a denial of a motion to dismiss is an interlocutory order, however, Evonik's motion is controlled by Rule 54(b).  *See Nursery Decals and More, Inc. v. Neat Print, Inc.*, 575 F. Supp. 3d 740, 743 (N.D. Tex. 2021) ("A decision to deny a motion

---

[67]    R. Doc. 15-1 at 2.

to dismiss is an interlocutory order to which the Rule 54(b) standard applies." (citing *Austin v. Kroger Texas, LP*, 864 F.3d 326, 366 (5th Cir. 2017)).

### A.    Legal Standard

Rule 54(b) "allows parties to seek reconsideration of interlocutory orders." *Austin*, 864 F.3d at 336. Under that rule, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* Whether to grant a motion for reconsideration under Rule 54(b) "rests within the discretion of the court." *Henry v. Maxum Indemnity Co.*, No. 20-2995, 2022 WL 1223701, at *3 (E.D. La. Apr. 26, 2022) (internal quotation marks omitted).

The standard for reconsideration under Rule 54(b) is "more flexible" than the standard for reconsideration under Rule 59(e), which permits reconsideration only for parties "to correct manifest errors of law or to present newly discovered evidence." *Id.* The flexible approach to Rule 54(b) "reflect[s] the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Austin*, 864 F.3d at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)).

Nevertheless, district courts assessing Rule 54(b) motions often consider the Rule 59(e) factors to determine whether reconsideration is warranted. *Ha Thi Le v. Lease Fin. Grp., LLC*, No. 16-14867, 2017 WL 2911140, at *2 (E.D. La. July 2, 2017).

"[R]ulings should only be reconsidered where the moving party has presented substantial reasons for reconsideration." *Adams*, 495 F. Supp. 3d at 396. "A motion for reconsideration does not support old arguments that are reconfigured." *Id.* Courts "should exercise their power sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays, which disserves the interests of justice." *Ha Thi Le*, 2017 WL 2911140, at *2.

## B.   Discussion

### 1.   *Continuing Tort Doctrine*

Plaintiff plausibly alleged continuing torts as to Evonik. A continuing tort is one in which "the operating cause of injury is a continuous one and gives rise to successive damages." *Miller v. Conagra, Inc.*, 991 So. 2d 445, 456 (La. 2008) (citation omitted). In her amended complaint, as in the original complaint, plaintiff alleges that "[s]he continues to experience adverse health effects because of the continued emission of EtO from the facility and is at risk for developing new health conditions as a result of the

continued dangerous emission of EtO from the facility."[68]  This is sufficient to allege a continuing-tort exception to prescription.  Evonik contends that plaintiff's only allegations of  unplanned emissions of EtO took place in 2012 and 2013, more than one year before the lawsuit was filed, which shows that she has not alleged that Evonik has engaged in continuously tortious conduct.[69]  This is the same argument that Evonik advanced, and this Court rejected, in its motion to dismiss the original complaint.[70]  Evonik presents no new arguments in its motion.  Rather, it impermissibly rehashes the arguments it made in its first motion to dismiss.  *See  Adams*, 495 F. Supp. 3d at 396.

### 2.   *Nuisance*

The same is true for Evonik's arguments regarding the sufficiency of plaintiff's nuisance allegations.  Under article 667 of the Louisiana Civil Code:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive

---

[68]   R. Doc. 3 at 3 ¶ 10.

[69]   R. Doc. 15-1 at 11.

[70]   R. Doc. 1 at 23-24 ("It is clear from plaintiffs' complaint that they cite the 2012 and 2013 releases not as discrete torts warranting individualized assessment, but instead as part of a continuum of ongoing conduct by Evonik—namely, the continued emission of EtO into the community.").

> his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.  However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 667.  Mere inconvenience, though, may be permissible. Under article 668, "every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor."  La. Civ. Code art. 668.  But article 669 provides that not all inconveniences need be tolerated:

> If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place.

La. Civ. Code art. 669.

These Code articles collectively "embody a balancing of rights and obligations associated with the ownership of immovables."  *Badke v. USA Speedway, LLC*, 139 So. 3d 1117, 1126 (La. App. 2 Cir.), *writ denied*, 151 So. 3d 606 (La. 2014).  "As a general rule, the landowner is free to exercise his rights of ownership in any manner he sees fit."  *Id.*  Indeed, a proprietor "may even use his property in ways which occasion some inconvenience to his

neighbors." *Id.* But under article 667, "his extensive rights do not allow him to do 'real damage' to his neighbor." *Id.* (citing *Rodrigue v. Copeland*, 475 So. 2d 1071 (La. 1985)).

With the exception of the "ultrahazardous" activities of pile driving and blasting with explosives—neither of which is at issue here—a claim under any or all of these three Code articles requires a showing of negligence. *See Brown v. Olin Chem. Corp.*, 231 F.3d 197, 200 (5th Cir. 2000) ("[T]he 1996 amendment to Article 667 applies to Articles 668 and 669 as well, so that stating a claim under one or more of these articles now requires a showing of negligence."). Accordingly, to assert a nuisance claim under any or all of these articles, plaintiffs must show that "a defendant is (1) a proprietor who (2) negligently (3) conducts 'work' on his property (4) that causes damage to his neighbor." *See Ictech-Bendeck v. Progressive Waste Sols. of LA, Inc.*, No. 18-7889, 2019 WL 4111681, at *2 (E.D. La. Aug. 29, 2019) (citing *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., LLC*, 88 F. Supp. 3d 615, 643 (E.D. La. 2015)).

Evonik argues that plaintiff has "failed to allege that Evonik breached any emissions standards regulated by the LDEQ, and the allegations lack the factual content necessary for the Court to draw the reasonable inference that

Evonik has violated the regulatory code."[71]   In support of its argument,

Evonik relies on *Brown v. Olin Chem. Corp.*, a case in which the Fifth Circuit

held that the plaintiffs failed to establish that defendant was liable for

nuisance when the evidence did "not show that [defendant] exceeded

acceptable emissions at any of the times at issue, nor was any evidence

adduced showing that [defendant] exercised anything less than reasonable

care in its operation of its plant."  231 F.3d at 200.

Evonik misses the mark.  As this Court explained in its May 27, 2022

Order and Reasons, the Louisiana Civil Code "establishes the standard of

conduct between a proprietor and his neighbors."[72]   To state a claim for

nuisance premised on negligence under the Code, a plaintiff need allege only

that the defendant "knew or, in the exercise of reasonable care, should have

known that [its] works would cause damage, and that [it] failed to exercise

such reasonable care."[73]  This standard "stems from the nature of the parties'

relationships as neighbors."[74]   Much like the original complaint, the

amended complaint includes allegations that there was "longstanding

industry knowledge of the carcinogenic effects of EtO" and "that defendants

---

[71]   R. Doc. 15-1 at 19.
[72]   R. Doc. 1 at 38.
[73]   *Id.* at 35 (quoting La. Civ. Code art. 667).
[74]   *Id.* at 39.

failed to prevent the damage caused by their emissions," which are "sufficient at the pleadings stage to support a nuisance claim under the vicinage articles of the Louisiana Civil Code."[75]

Evonik has thus failed to demonstrate that the "extraordinary remedy" of reconsideration is warranted here. *Castrillo v. Am. Home Mortg. Serv., Inc.*, No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010).

## IV.   MOTION FOR A MORE DEFINITE STATEMENT

### A.   Legal Standard

A district court will grant a motion for a more definite statement pursuant to Rule 12(e) when the pleading at issue "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e).  The motion must state the defects in the pleading and the details desired.  *See id.*  A party, however, may not use a Rule 12(e) motion as a substitute for discovery.  *Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir.1959).  Given the liberal pleading standard set forth in

---

[75]  *Id.* at 35-36.  In any event, plaintiff's negligence claim is not premised on a violation of the emissions standards of the LDEQ; rather, plaintiff's claim is premised on Evonik's failure to control emissions in compliance with the requirements of L.A.C. 33.III.905(A) and L.A.C. 33.III.2121.  Whether Evonik violated the LDEQ's emissions standards is not controlling.

Rule 8, Rule 12(e) motions are disfavored.  *See Mitchell*, 269 F.2d at 132;

*Gibson v. Deep Delta Contractors, Inc.*, No. 97–3791, 2000 WL 28174, at *6

(E.D. La. Jan. 14, 2000).  At the same time, the Supreme Court has noted

that "[i]f a pleading fails to specify the allegations in a manner that provides

sufficient notice," then a Rule 12(e) motion may be appropriate.

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  In deciding whether

to grant a Rule 12(e) motion, the trial judge is given considerable discretion.

*Newcourt Leasing Corp. v. Regional Bio–Clinical Lab, Inc.*, No. 99–2626,

2000 WL 134700, at *1 (E.D. La. Feb. 1, 2000).

### B.    Discussion

Evonik seeks "a more definite statement requiring [p]laintiff to identify

the alleged 'unauthorized' or unpermitted emissions" from the facility that

form the basis of plaintiff's claims.[76]  Motions for a more definite statement

are warranted where "(1) a responding party cannot reasonably respond to a

pleading or (2) the pleading does not provide sufficient notice."  *Sylve v. K-*

*Belle Consultants*, 2020 WL 59651, at *2 (E.D. La. Jan. 6, 2020) (internal

quotation marks omitted).  Neither is true here.  Further, motions for a more

definite statement are not warranted when "the information sought can

---

[76]    R. Doc. 15 at 20.

otherwise be obtained by discovery." *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006).  There is no reason Evonik cannot seek more granular information about the emissions plaintiff challenges in discovery.  Accordingly, Evonik's motion for a more definite statement is denied.

## C. CONCLUSION

For the foregoing reasons, the Court GRANTS Shell's motion to dismiss in its entirety.  Plaintiff's claims against Shell are dismissed with prejudice.  The Court DENIES Evonik's motion to dismiss or, in the alternative, for a more definite statement.  The Court also DENIES Evonik's motion for reconsideration of the issues this Court already resolved in its May 27, 2022 Order and Reasons.


New Orleans, Louisiana, this __4th__ day of November, 2022.


_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE